

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2008

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lin v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1080.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1080

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-4056

JING LIN;
YUN QIN YOU,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review from the Board of Immigration Appeals,
BIA Nos. A77-993-596 & A77-957-953
Immigration Judge: The Honorable Donald Vincent Ferlise

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 8, 2008

Before: SMITH, HARDIMAN,
and COWEN, *Circuit Judges*,

(Filed: June 2, 2008)

OPINION

SMITH, *Circuit Judge*:

Jing Lin ("Lin")[1] seeks review of an order issued by the Board of Immigration

Appeals ("BIA") on August 14, 2006, which adopted and affirmed the decision of the

Immigration Judge ("IJ") denying Lin's application for asylum, withholding of removal

and relief under the United Nations Convention Against Torture ("CAT").[2] Lin, a

Chinese nationalist from the Fujian Province, arrived in the United States on October 22,

2001.

Upon his arrival at the Los Angeles Airport, Lin was detained and questioned by

Immigration and Naturalization Service ("INS") officials.[3] Lin testified at his removal

hearing that a Mandarin interpreter was provided for the duration of the airport interview

and Lin read and initialed both the warnings and a transcript of the interview. When

asked why he wanted to gain entry, Lin explained that he sought work in the United

States because he needed to support a pregnant girlfriend.[4]

On November 6, 2001, Lin had a "credible fear" interview. During this second

_____

[1] Lin appeared with his wife, Yun Qin You, at the Immigration Removal Proceedings. You's claims were derivative of Lin's claims, and he serves as the principal petitioner in this appeal.

[2] The IJ had jurisdiction pursuant to 8 C.F.R. § 208.2(b). The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1003.1(b). This Court has jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252(a).

[3] This interview is permissible pursuant to 8 U.S.C. § 1225(b)(1)(B)(i) ("An asylum officer shall conduct interviews of aliens . . . either at a port of entry or at such other place designated by the Attorney General.")

[4] Lin met and married his wife, You, while living in the United States. The woman to whom he refers as his fiancee throughout the removal hearing is identified as Chen Juen. Juen did not accompany Lin to the United States when he entered the country in 2001.

2

interview, Lin claimed that when Chinese authorities learned of the pregnancy and the couple's unmarried status, they fined Lin 15,000 RMB, subjected his girlfriend to a forced abortion, and threatened him with a verbal notice of arrest. In April of 2002, Lin filed an I-589 application for asylum and withholding with a similar recitation of facts, claiming persecution on the basis of political opinion.[5]

In his May 13, 2003 decision,[6] the IJ found that Lin had numerous "material [and] substantial" discrepancies between his initial interviews, his written application for asylum, and the testimony he offered at his removal hearing. Specifically, the IJ found that Lin's initial interview at the airport and his subsequent testimony at the removal hearing gave rise to incongruities that were significant in making a credibility determination. Furthermore, Lin's presentation of a certificate of abortion, allegedly obtained by Lin's mother, contravened Lin's testimony, where he asserted that his girlfriend had a struggle with birth control officials which led to a miscarriage.

---

[5] A refugee is defined, in relevant part, as follows:

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).

[6] We note that there is a discrepancy in the Record; the removal hearing purports to have occurred on November 30, 2004, but the IJ's Oral Decision and Order is dated May 13, 2003. (App. A-1.)

The IJ found that Lin had demonstrated neither past persecution nor a well-founded fear of future persecution. After delineating Lin's numerous contradictory statements, the IJ made an adverse credibility finding and determined that Lin had fabricated his entire case-in-chief and filed a frivolous application for asylum.

On August 14, 2006, the BIA adopted and affirmed the IJ's decision.[7] The BIA was particularly persuaded by the IJ's adverse credibility finding because of "the lead respondent's inconsistent recitation of details of key events underpinning his asylum application, including when he was apprized that his fiancee had an abortion; whether she was aborted or miscarried; and whether her pregnancy was disclosed to birth control officials by the respondent or during a physical examination."

Adverse credibility determinations are reviewed under the substantial evidence standard. *Balasubramanrim v. I.N.S.*, 143 F.3d 157, 161 (3d Cir. 1998). Under this standard, the BIA's credibility determination must be upheld on review unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004) (internal citations omitted). Minor inconsistencies are not an adequate basis for an adverse credibility finding. *Id.*

Although we are troubled by the tenor of the IJ's questioning of Lin, and we believe translation difficulties occurred during the hearing, we are nevertheless persuaded

---

   [7] Even though the Petitioner did not challenge the IJ's frivolous finding on appeal to the BIA, the BIA nonetheless declared that there was no reason to disturb the IJ's determination that the asylum application was frivolous given Petitioner's material factual discrepancies.

that the IJ's findings are supported by substantial evidence. Lin cites to *Martinez-Sanchez v. I.N.S.*, 794 F.2d 1396 (9th Cir. 1986), and argues that the IJ's credibility finding was unjustified because it relied on trivial errors, such as inconsistencies in dates and incorrect responses on immigration forms. We do not find the errors Lin made to be trivial. As the BIA noted, there were inconsistencies as to "key events underpinning [Lin's] asylum application." Furthermore, Lin provides no explanation as to why his factual representations substantially changed between the time of his airport interview, his "credible fear" interview, and his hearing before the IJ. "It is established in this Circuit that inconsistencies between an airport statement and an asylum seeker's testimony before an IJ is not sufficient, standing alone, to support a BIA finding that the petitioner was not credible." *Fiadjoe v. Atty General,* 411 F.3d 135, 159 (3d Cir. 2005) (citing *Balasubramanrim*, 143 F.3d at 164). Here, these inconsistencies do not stand alone; they are but one part of Lin's overall lack of credibility.

For the reasons stated above, we will deny Lin's petition for review.